IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JANE A. RESTANI, JUDGE

| | |
|---|---|
| TRINA SOLAR (CHANGZHOU) SCIENCE & TECHNOLOGY CO., LTD., YANCHENG TRINA SOLAR GUONENG SCIENCE & TECHNOLOGY CO., LTD., TRINA SOLAR (SU QIAN) TECHNOLOGY CO., LTD., TRINA SOLAR YIWU TECHNOLOGY CO., LTD., TRINA SOLAR CO., LTD., TRINA SOLAR (YANCHENG DAFENG) CO., LTD., TRINA SOLAR SCIENCE & TECHNOLOGY (YANCHENG) CO., LTD., TRINA SOLAR (SUQIAN) OPTOELECTRONICS CO., LTD., TRINA SOLAR (CHANGZHOU OPTOELECTRONIC DEVICE CO., LTD., CHANGZHOU TRINA SOLAR YABANG ENERGY CO., LTD., HUBEI TRINA SOLAR ENERGY CO., LTD., TURPAN TRINA SOLAR ENERGY CO., LTD., TRINA SOLAR (HEFEI) SCIENCE AND TECHNOLOGY CO., LTD., CHANGZHOU HESAI PV RIBON MATERIALS CO., LTD., CHANGZHOU HEWEI NEW MATERIAL TECHNOLOGY CO., LTD., CHANZHOU TRINA HEZHONG PV CO., LTD., AND CHANGZHOU TRINA PV RIBBONS MATERIALS CO., LTD., | Court No. 23-00219 |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| AMERICAN ALLIANCE FOR SOLAR MANUFACTURING, | |
| Defendant-Intervenor. | |

**DEFENDANT'S AFFIRMATIVE MOTION FOR REMAND**

Pursuant to Rule 7(b) of the Rules of the United States Court of International Trade,

defendant, the United States, respectfully requests that the Court remand this action to the Department of Commerce for the agency to reconsider or further explain its calculation of benchmark prices for ocean freight.

In this case, plaintiffs Trina Solar (Changzhou) Science & Technology Co., Ltd., *et al.* (Trina Solar) challenge Commerce's ocean freight calculations in the 2021 administrative review of its countervailing duty order covering solar products from China.  Trina Solar Complaint, ECF No. 6.  Although the parties have not fully briefed this matter, after further considering the matter following the videoconference held with the Court on November 21, 2023, we respectfully submit that a remand is appropriate for the reasons set forth below.

Counsel for the Government has conferred regarding this request with counsel for plaintiff Trina Solar and counsel for defendant-intervenor American Alliance for Solar Manufacturing (Alliance), both of whom consent to our motion.  Specifically, Kenneth Hammer on behalf of Trina Solar and Laura El-Sabaawi on behalf of American Alliance for Solar Manufacturing consented by email on December 11, 2023.

## **STATEMENT OF FACTS**

On February 18, 2015, Commerce published its countervailing duty order concerning solar products from China.  *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 8,592 (Dep't of Commerce Feb. 18, 2015).  In April 2021, following a request for review from Trina Solar, Commerce initiated an administrative review of the order for the period from January 1 to December 31, 2021.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 21,619 (Dep't of Commerce Apr. 12, 2022).

Under the countervailing duty statute, "{a} benefit shall normally be treated as conferred" by Commerce "where goods or services are provided, if such goods or services are provided for less than adequate remuneration." 19 U.S.C. § 1677(5)(E)(iv). Under 19 C.F.R. § 351.511(a)(2), Commerce measures the remuneration received from a government for goods or services against comparable benchmark prices to determine whether the government provided goods or services for less than adequate remuneration. To construct the benchmarks to measure adequate remuneration, Commerce, when appropriate, will adjust the benchmark price to reflect the price that a firm would pay if it imported the product by including delivery (*i.e.*, ocean freight) and import duties. *See* 19 C.F.R. § 351.511(a)(2)(iv).

On January 27, 2023, the Alliance and Trina Solar each timely submitted benchmark information to Commerce. The Alliance provided 2021 price information from Descartes for shipping products from four United States ports (New York, Norfolk, Miami, and Baltimore) to Shanghai to value ocean freight. Alliance Benchmark Submission at 3 and Ex. NFI-4, NFI-5 (P.R. 74; C.R. 99). Trina Solar provided monthly prices from Xeneta for shipping products to Shanghai from several ports around the world (Busan, Jakarta, Japan, Mumbai, Hamburg, and Los Angeles). Trina Solar Benchmark Submission at 4 and Ex. 4 (P.R. 68; C.R. 94). On February 3 and 6, 2023, Trina Solar and the Alliance respectively submitted rebuttal benchmark information. Trina Solar Rebuttal Benchmark Submission (P.R. 86; C.R.113); Alliance Rebuttal Benchmark Submission (P.R. 92; C.R. 117).

In March 2023, Commerce published the preliminary results of the review. *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China*, 88 Fed. Reg. 14,331 (Dep't of Commerce Mar. 8, 2023) (Preliminary Results), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 105). Commerce preliminarily relied on averages of the

Descartes ocean freight prices provided by the Alliance, and the Xeneta prices provided by Trina Solar to value ocean freight in calculating delivered world market benchmark prices for solar grade polysilicon, aluminum extrusions, and solar glass.  PDM at 17.  For shipping prices from the United States, Commerce first averaged the United States prices from Descartes and Xeneta (thereby deriving a single shipping price from the United States), before averaging the United States prices with the Xeneta prices from around the world.  *Id.*

In September 2023, Commerce published the final results of its review.  *Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China*, 88 Fed. Reg. 62,770 (Dep't of Commerce Sept. 13, 2023) (Final Results), and accompanying Issues and Decision Memorandum (IDM) (P.R. 214).  With respect to ocean freight, Commerce changed course, determining that the Xeneta data were not reflective of market conditions because they did not include key surcharges, whereas the Descartes data includes surcharge information.  *See* IDM Cmt. 5.  Therefore, Commerce recalculated its ocean freight benchmark for the final results by relying solely on the Descartes data.  *Id.*  This litigation ensued.

On November 21, 2023, the Court held a videoconference regarding this matter.  *See* ECF No. 18.  Pursuant to the Court's instructions during the videoconference, as well as in the Court's subsequent docket entry in this matter (ECF No. 19), the parties submitted a joint status report regarding the manner in which they believe that this matter should proceed in light of the concerns raised by the Court during the November 21, 2023 videoconference.  ECF No. 20.  Upon taking into account the Court's comments during the November 21, 2023 videoconference, and further evaluating the ocean freight issue raised in this litigation, the Government explained that it was considering filing an affirmative motion requesting that the Court remand this matter for further analysis in light of the Court's decisions regarding Commerce's selection of ocean

4

freight benchmark data for China solar countervailing duty proceedings in *Risen Energy Co. Ltd. v. United States*, Ct. Int'l Trade No. 20-3912. ECF No. 21. We respectfully requested that the Court allow until December 11, 2023, for us to file a motion, which request the Court granted. *Id.*; ECF No. 22.

## ARGUMENT

**I.      Legal Standard**

Commerce may, without confessing error, ask the Court to remand a matter so that Commerce may reconsider its prior position. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). The United States Court of Appeals for the Federal Circuit has outlined various scenarios in which an agency may seek a remand, including (a) seeking a remand to reconsider its decision because of intervening events outside of the agency's control; (b) even in the absence of intervening events, seeking a remand, without confessing error, to reconsider its previous position; and (c) seeking a remand because it believes that its original decision was incorrect on the merits and it wishes to change the result. *Id.* at 1028.

A remand to an agency is generally appropriate if the agency's concern is substantial and legitimate. *Id.* at 1029; *see also Ad Hoc Shrimp Trade Action Committee v. United States*, 882 F. Supp. 2d 1377, 1381 (Ct. Int'l Trade 2013); *SeAH Steel Corp. v. United States*, 704 F. Supp. 2d 1353, 1378 (Ct. Int'l Trade 2010). "{C}oncerns are considered substantial and legitimate when (1) Commerce supports its request with a compelling justification, (2) the need for finality does not outweigh the justification, and (3) the scope of the request is appropriate." *Baroque Timber Industries (Zhongshan) Co., Ltd. v. United States*, 925 F. Supp. 2d 1332, 1339 (Ct. Int'l Trade 2013). Likewise, clarifying and correcting a potentially inaccurate determination is a compelling justification for an affirmative remand request. *Id*.

## II.  The Court Should Grant A Remand For Commerce To Reconsider Or Further Explain Its Benchmark Calculations For Ocean Freight

The Court should exercise its discretion to grant our remand request in this case because Commerce's reasons for seeking remand are "substantial and legitimate." *SKF*, 254 F.3d at 1029. Trina Solar contests Commerce's use of Descartes data as a benchmark for ocean freight. *See* Trina Solar Complaint. Without confessing error, the Government respectfully requests that the Court remand Commerce's determination so that Commerce may reconsider or further explain its ocean freight calculations in light of the Court's decisions regarding ocean freight issues in *Risen Energy v. United States*, Ct. Int'l Trade No. 20-3912 (*Risen Energy*).

In *Risen Energy*, plaintiffs challenged the sixth administrative review of Commerce's countervailing duty order on solar cells from China. In relevant part, Commerce initially used a simple average of two datasets sourced from Descartes and Xeneta to derive an ocean freight value. The Court remanded for Commerce to reconsider certain flaws in the Descartes data. *Risen Energy Co. v. United States*, 570 F. Supp. 3d 1369, 1376-79 (Ct. Int'l Trade 2022). The Court indicated that it was concerned about whether the Descartes data were appropriate to arrive at a world market price when the Xeneta data provided global routes compared to the Descartes data's United States-focused routes. *Id.* at 1379. The Court also considered that the Descartes data might be flawed because it appeared to be sourced from limited samples based on the data's tariff and freight forwarder codes, was for less than a container load, and some of the routes were from inland American cities, which could incur additional fees. *Id.* As a result, the Court remanded for Commerce to reconsider these issue before determining whether using the Descartes data was appropriate, while also instructing that, if Commerce continued to use the Descartes data, it should average it only with the Xeneta data for United States to China routes, instead of using a simple average, to avoid over-weighting the Descartes data. *Id.*

6

On remand, Commerce continued to rely on the Descartes data but omitted inland routes from the dataset. *See Risen Energy Co. v. United States*, No. 20-03912, 2023 WL 2890019, at \*7-9 (Ct. Int'l Trade Apr. 11, 2023). The Court remanded a second time, however, holding that Commerce did not sufficiently comply with its remand order when it failed to address whether the Descartes data constitute a high-cost, low quantity dataset. *Id*. at \*9. Moreover, the Court found that Commerce did not fully consider the potential impact that a small sample size could have on the comparability of the Descartes and Xeneta datasets. *Id*. The Court thus held that "{i}f Commerce cannot supply a convincing reason as to why the Descartes data improves accuracy, Commerce should not use it." *Id.*

Following the Court's second remand decision in *Risen Energy*, Commerce excluded the Descartes data in its second remand results and relied solely on Xeneta ocean freight prices, and the Court sustained Commerce's determination. *See Risen Energy Co. v. United States*, No. 20-03912, 2023 WL 7991650 (Ct. Int'l Trade Nov. 17, 2023).

Additionally, in the most recent administrative review of the countervailing duty order covering solar cells from China—which concerns calendar year 2020—Commerce found that "use of the Descartes data for developing a world market price is not appropriate." *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled into Modules, from the People's Republic of China*, 88 Fed. Reg. 44,108 (Dep't of Commerce July 11, 2023), and accompanying IDM Cmt. 10.[1] We observe, however, that the record at issue in this case relates to Commerce's calendar year 2021 countervailing duty administrative review of its order concerning solar

---

[1] Following its determination in that review, Commerce also requested a remand regarding its use of Descartes data in *Risen Energy v. United States*, Ct. Int'l Trade No. 22-231, which the Court granted in October 2021. *See Risen Energy Co. v. United States*, No. 22-00231, 2023 WL 6620508, at \*9-10 (Ct. Int'l Trade Oct. 11, 2023)

products from China, meaning that the case arises from a separate order with a distinct record from the previous reviews concerning Commerce's order covering solar cells (including with respect to parties' submissions regarding the significance of surcharges in calculating an ocean freight benchmark rate).  *See* IDM Cmt. 5.

Nonetheless, we recognize that Commerce's determination in this case did not adequately address the concerns that the Court articulated in the *Risen Energy*, Ct. Int'l Trade No. 20-3912, litigation regarding use of Descartes data when Commerce explained why it was using the Descartes data rather than the Xeneta data in this review.  Hence, a voluntary remand is appropriate for Commerce to reconsider or to further explain its determination to rely on the Descartes data to calculate ocean freight, given that similar claims are presented by this litigation.  Moreover, as we stated in the December 1, 2023 status report, the Government would also be receptive to receiving any additional guidance that the Court believes is appropriate to provide regarding its concerns, so that any resulting remand determination can be most helpful to the Court in resolving this litigation in a just and efficient manner.

More generally, given the Court's decisions in *Risen Energy*, we respectfully submit that a remand would promote judicial efficiency and conserve Court and party resources.  Likewise, the need for finality does not outweigh the justification for the remand request, particularly considering that this motion is being filed early in the case.  Finally, the scope of our request is limited to the issues raised and is therefore appropriate.

## **CONCLUSION**

For these reasons, we respectfully request that the Court remand this action to Commerce for Commerce to reconsider or further explain its benchmark calculation for ocean freight.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
|  | PATRICIA M. MCCARTHY<br>Director |
|  | /s/ Reginald T. Blades, Jr.<br>REGINALD T. BLADES, JR.<br>Assistant Director |
| OF COUNSEL:<br>ASHLANDE GELIN<br>Attorney<br>Office of the Chief Counsel<br>for Trade Enforcement and Compliance<br>U.S. Department of Commerce | /s/ Joshua E. Kurland<br>JOSHUA E. KURLAND<br>Senior Trial Counsel<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 616-0477<br>Email: Joshua.E.Kurland@usdoj.gov |
| December 11, 2023 | *Attorneys for Defendant United States* |