C-570-011<br>
Remand<br>
Slip Op. 23-174<br>
POI: 01/01/2021-12/31/2021<br>
**Public Document**<br>
E&C/OVII: MEH

***Trina Solar (Changzhou) Science & Technology Co., Ltd. v. United States,***
**Court No. 23-00219, Slip Op. No. 23-174 (CIT December 12, 2023)**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

I.      SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of

redetermination pursuant to the opinion and remand order of the U.S. Court of International

Trade (the Court), issued on December 12, 2023.[1]  These final results of redetermination concern

Commerce's final determination in the administrative review of the countervailing duty (CVD)

order on certain crystalline silicon photovoltaic products (solar products) from the People's

Republic of China (China), covering calendar year 2021.[2]  The plaintiff is Trina Solar

(Changzhou) Science & Technology Co., Ltd (Trina Solar).  The sole issue concerns the

determination of ocean freight relied upon in calculating the subsidy rates for several programs

pursuant to which the Government of China (GOC) provided goods for less than adequate

remuneration (LTAR).  Pursuant to the Court's order, we have revised our determination of

ocean freight and, consequently, we have recalculated subsidy rates for the relevant LTAR

programs.

---

[1] *See Trina Solar (Changzhou) Science & Technology Co., Ltd. v. United States*, Court No. 23-00219, Slip Op. No. 23-174 (CIT December 12, 2023) (*Remand Order*).
[2] *See Certain Crystalline Silicon Photovoltaic Products From the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2021*, 88 FR 62770 (September 13, 2023) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).

II.    BACKGROUND

In the *Final Results*, Commerce determined ocean freight by taking an average of rates published by two services:  The Descartes Systems Group Inc. (Descartes) and Xeneta (Xeneta).[3] Trina Solar filed a complaint concerning the issue on October 13, 2023.  Subsequently, and in light of the Court's holding in *Risen Energy Co. v. United States*, Slip Op. 23-48, 2023 WL 2890019 (CIT April 11, 2023) (*Risen Energy II*), Commerce requested that the issue be remanded for further consideration.[4]  The Court then granted the motion for remand with additional guidance.  Specifically, the Court instructed Commerce to consider its ruling in *Risen Energy I* and *Risen Energy II*.[5]  The Court also instructed Commerce to use a multiple route database in keeping with the statutory preference for a broadly based ocean freight rate, in the absence of "the ability to concretely explain a strong reason for a single rate source."[6]

On January 31, 2024, Commerce issued draft results of redetermination (Draft Remand).[7] On February 8, 2024, we received comments on the Draft Remand from Trina Solar.[8]  No other comments were received.  After reviewing the comments received, we have made no changes to the Draft Remand.  The Draft Remand's discussion of our analysis is restated below with no modification.  Following the discussion of our analysis, we address all comments received.

III.    DISCUSSION

In *Risen Energy II*, the Court found that it could not sustain Commerce's ocean freight benchmark calculation (*i.e.*, an average of the Descartes and Xeneta data), finding that Commerce did not comply with the Court's previous instructions (in *Risen Energy I*) to explain

---

[3] *See Final Results* IDM at Comment 5.
[4] *See Remand Order* at 1.
[5] *Id*.; *see Risen Energy Co. v. United States*, 570 F. Supp. 3d 1369, 1372 (CIT 2022) (*Risen Energy I*).
[6] *See Remand Order* at 2.
[7] *See Trina Solar (Changzhou) Science & Technology Co., Ltd. v. United States*, Court No. 23-00219, Slip Op. No. 23-174 (CIT December 12, 2023); Draft Results of Redetermination Pursuant to Court Remand, issued January 31, 2024 (Draft Remand).
[8] *See* Trina Solar's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated February 8, 2024 (Trina Solar Comments).

its continued use of the Descartes data.[9]  Specifically, the Court stated that Commerce "did not consider the potential impact that a small sample size {from the Descartes data} could have when affecting the comparability of the Descartes and Xeneta datasets."[10]   In light of its finding, the Court instructed Commerce to provide "a convincing reason as to why the Descartes data improves accuracy" for the ocean freight, or not to use it.[11]  In the remand redetermination issued pursuant to *Risen Energy II*, Commerce removed the Descartes data from the ocean freight determination, noting that the record did not contain information that could support the explanation required by the Court.[12]

Similar to *Risen Energy I*, the Court has again instructed Commerce to consider its "statutory preference for a broadly based ocean freight rate for an LTAR benchmark."[13] Specifically, the Court instructed Commerce to provide an analysis that considers the flaws in Descartes data and whether the continued use of Descartes data would reasonably "reflect{} the price a firm actually paid or would pay if it imported the product."[14]  Upon reconsideration of the issue for this remand redetermination, we have determined not to rely upon the Descartes database for the base rates for ocean freight in constructing world market price benchmarks for LTAR programs under 19 CFR 351.511(a)(2)(ii).  Instead, Commerce is now relying on the Xeneta data exclusively for the base freight rates and then making certain adjustments to the Xeneta data to account for missing surcharges, relying on the Descartes data.

---

[9] *See Risen Energy II* at 18.
[10] *Id.*
[11] *Id.*
[12] *See Final Results of Redetermination*, *Risen Energy Co., Ltd. et al. v. United States*, Consol. Court No. 20-03912; Slip Op. 23-48 (CIT April 11, 2023), dated July 11, 2023, at 12, available at https://access.trade.gov/Resources/remands/23-48.pdf.).
[13] *See Remand Order* at 1; *see also Risen Energy I* at 16 ("Commerce should also consider the language and purpose of the controlling regulation to decide whether it is necessary to use the Descartes data to arrive at a "world market price"").
[14] *See Risen Energy I* at 16 (citing 19 CFR 351.511(a)(2)(iv)).

Specifically, in the *Final Results*, Commerce concluded that the Xeneta data do not contain surcharges for congestion, fuel, and peak season surcharges.[15]  Our conclusion was based on Xeneta's own statements indicating it did not make these surcharges available until after the POR.[16]  Similarly, based on Xeneta's statements, we concluded the missing surcharges would have "a significant impact on freight rates on some of the largest global trade lanes."[17]  In order to adjust the Xeneta ocean freight rates for the missing surcharges, we have taken information separately itemized in the Descartes data for a "USA port congestion surcharge" and an "Emergency fuel surcharge" (EFS), submitted by the American Alliance for Solar Manufacturing (Alliance).[18]  As the Descartes data do not appear to itemize a separate "peak season" surcharge, we have not adjusted the Xeneta data for that missing amount.  The Descartes data also list an "IMO 2020 surcharge" and a "Panama canal surcharge."[19]  Because there is no indication on the record that these surcharges are both missing from and relevant to the Xeneta data, we did not add the amounts associated with these two surcharges to the Xeneta data.  Finally, the Descartes data also list "emergency bunker surcharges."[20]  We did not add the amount associated with these surcharges to the Xeneta data because Xeneta states that its ocean freight data include "bunker adjustment."[21]

The total of the U.S. port congestion surcharge and the EFS is $1,600 per container.  We divided this amount by 28.87 tons per container to derive an adjustment of $55.42 per ton, which we added to the Xeneta ocean freight base rates.

---

[15] *See Final Results* IDM at 26-28.
[16] *Id.*
[17] *Id.* at 28 (quoting Xeneta's website).
[18] *See* Alliance's Letter, "Submission of Benchmark Information," dated January 27, 2023, at Exhibit NFI-4.
[19] *Id.*
[20] *Id.*
[21] *See* Trina Solar's Letter, "Benchmark Submission," dated January 27, 2023 (Trina Solar Benchmark Data), at Exhibit 4(c), at page 4.

Accordingly, by relying on the Xeneta data for the base freight rates, Commerce is now

relying on a broadly based ocean freight rate consistent with the *Remand Order*, our regulations

and the redetermination issued pursuant to *Risen II* and upheld by the Court.[22]  Additionally,

because Commerce is no longer relying on the Descartes data in determining the ocean freight

base rates, Commerce does not need to address the concerns expressed by the Court in *Risen I*

and *Risen II* concerning whether the Descartes base rates represent a limited and biased sample

of freight rates.[23]

## IV.    COMMENTS

*Trina Solar*

- In the Draft Remand, Commerce properly implemented the Court's instructions to consider the Court's prior rulings concerning the ocean freight issue.  Commerce properly determined not to rely upon the Descartes database in constructing a world market price because those rates were not based on a broad representation of worldwide market prices.[24]
- Trina does not concede that Commerce correctly concluded that the Xeneta data does not include freight surcharges.[25]  Contrary to Commerce's conclusion, the evidence on the record clearly reflects that the sea freight rates in Xeneta's system are defined as "the total ocean freight cost (port – port)."[26]
- There is no evidence on the record to support Commerce's implicit conclusion that certain congestion surcharges and fuel charges are excluded from the Xeneta dataset merely because Xeneta has chosen to report specific surcharges in another data series.
- Nevertheless, based on the unique record in this case, Trina does not object to Commerce's determination to exclusively rely upon the Xeneta ocean freight pricing data for the base freight rates, adjusted to reflect certain surcharges, including USA port congestion and emergency fuel surcharges, from the Descartes pricing dataset.

**Commerce Position:**  Commerce continues to conclude that it is appropriate to add certain

surcharges to the Xeneta ocean freight pricing data.  In the *Final Results*, Commerce stated:

> {Domestic interested parties} placed on the instant record a September 1, 2022 (which is subsequent to the 2021 POR) blog post from Xeneta itself entitled, "Product Update:  Xeneta Adds Ocean Freight Surcharge Data," which states that "{o}n top of the agreed freight rate, surcharges are among the most common

---

[22] *See Risen Energy Co., Ltd. v. United States*, Slip Op. 23-161 (CIT 2023) at 5.
[23] *See, e.g., Risen II* at 17-18.
[24] *See* Trina Solar Comments at 2.
[25] *See* Draft Remand at 3.
[26] *See* Trina Solar Comments at 2 (citing Trina Solar Benchmark Data at Exhibit 4(c)).

additional costs."   This Xeneta blog post goes on to state, "{b}efore adding surcharges to the platform, we had to ensure that our data was sufficient and that we had a methodology in place to collect and calculate accurate figures.  Now that this work is complete . . . we are proud to offer our customers the Ocean Surcharge Dataset."  This Xeneta blog postalso states that "{t}he Ocean Surcharge dataset is immediately available to Xeneta customers.  Contact your Xeneta Customer Success Manager to get access."   Thus, given the timing of this Xeneta announcement, it is reasonable to conclude that Xeneta first provided ocean freight surcharge data around September 2022, which is after the POR of the instant administrative review.  This announcement also provides a sample of Xeneta's "Monitor:  Market trends" where clients can access Xeneta's ocean freight data; the sample shows that congestion, fuel, and peak season surcharges are maintained separately in Xeneta's data.[27]

Therefore, Commerce reasonably concluded the Xeneta data lacked surcharges before September 1, 2022, and, thus, these surcharges were not included in the 2021 Xeneta data Trina Solar placed on the record in its benchmark submission.[28]  We also noted that this conclusion was consistent with Commerce precedent, such as an administrative review of stainless steel kegs from China finding that the Xeneta data was not reflective of market conditions because they did not include certain surcharges.[29]  While Trina Solar may disagree with the inference Commerce has drawn from the Xeneta blog post, it has not cited record information supporting a contrary interpretation.  Furthermore, Commerce is not precluded from making inferences based on the evidence presented on the record and did so in the *Final Results*.[30]  Therefore, Commerce continues to find that its conclusion that the Xeneta data lacked certain surcharges for an appropriate ocean freight benchmark calculation was reasonable.[31]  Moreover, the *Remand Order* did not take issue with the conclusion that the Xeneta data lacked surcharges.[32]  Rather,

---

[27] *See Final Results* IDM at 27 (citations omitted).

[28] *Id.*

[29] *See Refillable Stainless Steel Kegs from the People's Republic of China:  Preliminary Results of Countervailing Duty Administrative Review, Rescission of Review in Part; 2020*, 87 FR 78045 (December 21, 2022), and accompanying Preliminary Determination Memorandum at 15, unchanged in *Refillable Stainless Steel Kegs from the People's Republic of China:  Final Results of Countervailing Duty Administrative Review; 2020*, 88 FR 24165 (April 19, 2023).

[30] *See Fuwei Films (Shandong) Co. v. United States,* 837 F. Supp. 2d 1347, 1351 (CIT 2012) (explaining that "Commerce's {} data choice is not rendered unreasonable because an alternative inference or conclusion could be drawn from the administrative record."); *see also Final Results* IDM at 27.

[31] *Id.*

[32] *See Remand Order* at 2.

the *Remand Order*, as discussed above in detail, took issue with the use of the Descartes data as

an alternative source of ocean freight data.[33]  Likewise, in its complaint, Trina Solar did not take

issue with Commerce's conclusion that the Xeneta data lacks surcharges, only with Commerce's

decision to rely on the Descartes data "exclusively."[34]

## V.    FINAL RESULTS OF REDETERMINATION

As a result of this *Remand Order*, we have redetermined ocean freight and recalculated

the subsidy rates for the provision of solar grade polysilicon, solar glass, aluminum extrusions,

and wafers at LTAR.  The revised rates for Trina Solar are as follows:

|  | *Final Results* | Final Remand |
|---|---|---|
| Solar Grade Polysilicon for LTAR | 0.72 | 0.66 |
| Aluminum Extrusions for LTAR | 0.01 | 0.01 |
| Solar Glass | 8.33 | 4.23 |
| Wafers | 0.89 | 0.86 |
| Total Subsidy Rate | 13.21 | 9.02 |

2/22/2024

X  _Ryan Majerus_

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

---

[33] *Id.*
[34] *Trina Solar v. United States*, Court No. 23-00219, Complaint, at 7.

7